UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW YORK EX REL. CAROL BEVILACQUA | ) ) ) ) | Case No. 14 CV 9933 KPF |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | FIRST AMENDED COMPLAINT |
| CITY PRACTICE GROUP OF NEW YORK, LLC; PHYSICIANS PRACTICE MANAGEMENT ASSOCIATES, LTD.; CITY MEDICAL OF THE UPPER EAST SIDE, PLLC; CITY MEDICAL OF THE UPPER WEST SIDE, PLLC; CITY MEDICAL OF COLUMBUS CIRCLE, PLLC; CITY MEDICAL OF UNION SQUARE, PLLC; CITY MEDICAL OF LOWER EAST SIDE, PLLC; CITY MEDICAL OF MIDTOWN EAST, PLLC; STATMD PHYSICIANS, PLLC; EAST COAST URGENT CARE PHYSICIANS PLLC; MURRAY HILL URGENT CARE, PLLC RICHARD J. PARK, M.D.; HARRY BIBER; MICHELLE BROSNAN, M.D.; JACK HWAIJONG LIU, M.D.; JOHN KAHOUN, M.D.; TUSHAR KAPOOR, M.D.; FAIZ KHAN, M.D.; GARY MAZER, M.D.; LEONARD PASTULA, M.D.; NEDAL SHAMI, M.D.; DAVID YUCHIN, SHIH, M.D.; LEKUAN FU, M.D.; PINAKI MUKHERJI, M.D.; VIBHU NARANG, M.D., and FRANCIS J. ALBERTINI, M.D. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **FILED UNDER SEAL PURSUANT TO 31 USC §3730(b)2** and **N.Y. STATE FIN. Law §190.2(b)** **DO NOT PLACE IN PRESS BOX DO NOT ENTER IN PACER** |
| Defendants | ) | |

Come now the Plaintiffs, and for their action state as set forth herein.

## INTRODUCTION

1.    This is an action to recover damages and civil penalties on behalf of the United

States of America and the State of New York arising out of false claims presented by or caused

to be presented by Defendants under the Federal Medicare program, the joint Federal-State Medicaid program, the New York State Health Insurance Program ("NYSHIP"), and other Government health care programs  in violation of Title 31 U.S.C. § 3729 et seq., popularly known as the  FALSE CLAIMS ACT (hereinafter, the "FCA"), and N.Y. State Fin. Law §187 *et seq*., the NEW YORK FALSE CLAIMS ACT (hereinafter, the "NYFCA").

2.     The Defendants' false claims involved (1) upcoding by billing high-level evaluation and management ("E/M") charges without recording any Past, Family, and/or Social History; (2) upcoding by billing new patient E/M charges for established patients; (3) other upcoding by billing for E/M services when the scope or nature of the services provided didn't justify the claim; (4) unbundling E/M charges by wrongful adding of Modifier 25; (5) billing after-hours service charges for services to patients who were seen during posted business hours; (6) billing a facility fee to government-pay programs which do not provide such a benefit for services by urgent care centers; (7) double billing injury-related services to government health care programs which were paid by the patients' Workmen's Compensation carriers; (8) false statements of the rendering or referring physician by use in their bills of National Provider Identifier ("NPI") numbers for physicians who did not render the care to or refer the patient; and (9) failure to make reasonable efforts to collect co-payments and deductibles, and waiving such charges prior to billing the patient.

3.     Defendants participate in the Medicare, Medicaid, Tricare, NYSHIP and other Federal and New York state health care programs in the State of New York, and have provided and continue to provide extensive medical services to beneficiaries of such programs in the State of New York.

## JURISDICTION AND VENUE

4.      Title 31 U.S.C. § 3732(a) provides that United States District Courts shall have jurisdiction over actions brought under the FCA.  Section 3732(b) of the same title provides that, "[t]he district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730" of the FCA.  The counts in this action concerning the NYFCA arise from the same transactions or occurrences as the counts brought under § 3730 of the FCA.

5.      Section 3732(a) of the FCA further provides that: "Any action under section 3730 may be brought in any judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."  Venue is proper in this District because numerous acts complained of herein occurred within this judicial district; and all Defendants transact business in this district by operating urgent care facilities and / or medical billing and management companies here.

## COMPLAINT UNDER SEAL

6.      Under both the FCA and the NYFCA, this Complaint is to be filed in camera. The FCA and the NYFCA both provide for the Complaint to remain under seal for at least sixty (60) days, and that the Complaint shall not be served on the Defendants until the Court so orders. The Government may elect to intervene and proceed with the Federal action and the State of New York may elect to intervene and proceed with the State actions within sixty (60) days after each receive both the Complaint and material evidence and information from the Relator.

## PARTIES TO THE ACTION

### Relator

7.     *Qui tam* Plaintiff Relator Carol Bevilacqua resides in Passaic County, New Jersey.  During the period further addressed below when Defendant billing company PPMA handled billing for all Defendant medical practices under contract as an outside billing service, Relator Bevilacqua was employed by Defendant Physicians Practice Management Associates, Ltd. ("PPMA"), where she principally worked on its billings for those practices.  She began working for PPMA on or about Dec. 21, 2010.

8.     On or about October 10, 2011, Defendant Dr. Park hired Relator Bevilacqua after having terminating Defendant PPMA's billing contract and moving the billing function for the Defendant Medical Practices identified below into a newly-organized entity owned and controlled by him.   This entity is Defendant City Practice Group of New York, LLC ("CPGNY").[1]   CPGNY hired former PPMA personnel who had been handling Dr. Park's accounts.   Relator Bevilacqua was employed by CPGNY until on or about Oct. 2, 2013.

9.     In her employment with both Defendants PPMA and CPGNY, Relator Bevilacqua held a position in Accounts Receivable, in which capacity she processed claim payments provided by carriers*,* submitted secondary claims to federal, state and private payors, worked with the various payors, providers, and patients to get payment for previously-filed claims which have not been paid in the ordinary course of business, reviewed unpaid and denied claims in the first instance, verified patients' insurance coverages, managed collections on unpaid accounts, and managed accounts receivable reporting.

---

[1] CPGNY was originally named Medical Enterprises, LLC.

<u>Relator Is Original Source of Information</u>

10.     Relator Bevilacqua has direct and independent knowledge of the information on which the allegations herein are based, and on or about September 16, 2014 voluntarily provided to the Government of the United States of America and to the State of New York through her counsel the information on which the allegations herein are based, in compliance with 31 U.S.C. §3730(e)(iv)(B), and with N.Y. State Fin. Law §188.7(b). Accordingly, she is an "original source" of the information herein, within the meaning of 31 U.S.C. §3730(e)(4)(B) and N.Y. State Fin. Law §188(7); however she states that to her knowledge the information contained herein concerning Defendants' FCA and NYFCA violations has not been publicly disclosed.

<u>Defendant Billing and Management Companies</u>

11.     Defendant Billing Company PPMA is a New York corporation organized and controlled by Defendant Biber, with a principal place of business at 2 Cooper Avenue, Huntington Station, NY 11746.   It provides billing and physician management services to physicians and other health care providers.   Until on or about Oct. 10, 2011, when it was replaced by Defendant CPGNY, PPMA provided billing and coding services on a contract basis for Defendant Dr. Park and the Defendant Medical Practices.

12.     Defendant CPGNY is controlled by, and wholly or partly owned by Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of Delaware, and has its principal place of business 336 East 86th Street, New York, NY 10028.   Its business is to manage the billing and accounts receivable for all services of the Defendant Medical Practices. As described above, it replaced Defendant PPMA in this capacity.

Defendant Principals

13.     Defendant Richard Park, M.D., is a doctor of medicine licensed in the State of New York and whose principal areas of practice are primary care and emergency medicine.  Dr. Park established and currently controls, at all times relevant to this matter, Defendant CPGNY and all the Defendant Medical Practices, as well as several other non-Defendant entities.  Dr. Park is 42 years old and resides in Roslyn Heights, NY.

14.     Defendant Harry Biber was, at all times relevant to this matter, the CEO and Chairman of Defendant PPMA.   Mr. Biber is a Certified Professional Coder whose responsibilities at PPMA include the overall operation and management of procedures for coding, reimbursement and charge description for its clients. Although Defendant Dr. Park terminated Mr. Biber's company's contract in October 2011, he personally was retained by Dr. Park and was employed part-time by Defendant CPGNY to work in his prior capacity for the Defendant Medical Practices up and until approximately six months ago. Mr. Biber is 67 years old and resides in Syossett, NY. Defendant Dr. Park and Defendant Mr. Biber are hereinafter together referred to as the "Defendant Principals".

Defendant Medical Practices

15.     *Urgent care* is ambulatory medical care normally provided on a walk-up (non-appointment and non-referral) basis for minor emergencies as an alternative to going to the emergency room[2].  Defendants City Medical of the Upper East Side, PLLC; City Medical of the Upper West Side, PLLC; City Medical of Columbus Circle PLLC; City Medical of Union Square, PLLC; City Medical of Lower East Side, PLLC, now doing business as City Medical of

---

[2] Medicare regulations provide as follows: *Urgent care services* means services furnished to an individual who requires services to be furnished within 12 hours in order to avoid the likely onset of an emergency medical condition. 42 C.F.R. 405.400.

Flatiron, PLLC; and City Medical of Midtown East (collectively, the "CityMD Defendants"), are urgent care facilities, and are certified Urgent Care Association of America providers. They advertise themselves as "New York's premier urgent care practice," with locations throughout the New York City area. They currently employ over 100 board-certified physicians, including Defendant Dr. Park.

16.    Defendant City Medical of the Upper East Side, PLLC is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of New York, and has its principal place of business at 336 East 86th Street, New York, NY 10028.

17.    Defendant City Medical of the Upper West Side, PLLC is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of New York, and has its principal place of business at 600 Shames Drive, Westbury, NY 11590.

18.    Defendant City Medical of Columbus Circle, PLLC is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of New York, and has its principal place of business at 600 Shames Drive, Westbury, NY 11590.

19.    Defendant City Medical of Union Square, PLLC is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of New York, and has its principal place of business at 336 E. 86th Street, New York, NY 10028.

20.    Defendant City Medical of Flatiron, PLLC is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the

laws of the State of New York, and has its principal place of business at 600 Shames Drive, Westbury, NY 11590.  City Medical of Flatiron was originally organized as Defendant City Medical of Lower East Side, PLLC on Apr. 19, 2011, but changed its entity name to City Medical of Flatiron on Oct. 5, 2011.

21.     Defendant City Medical of Midtown East, PLLC is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of New York, and has its principal place of business at 336 E. 86th Street, New York, NY 10028.

22.     Defendant East Coast Urgent Care Physicians, PLLC is also an urgent care facility, and is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of New York, and has its principal place of business at 26 Park Place, Roslyn, NY 11577.

23.     Defendant Murray Hill Urgent Care, PLLC is also an urgent care facility, and is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of New York, and has its principal place of business at 336 E. 86th Street, New York, NY 10028.

24.     Defendant Stat MD Physicians, PLLC ("StatMD") is also an urgent care facility. According to StatMD's website advertising, it offers patients without major medical emergencies the opportunity to be seen without an appointment and "allows patients to receive quality healthcare when they most need it in an expeditious manner and in a convenient location."  It employs at least five board-certified physicians who are residency-trained in the practice of urgent care.  It is controlled by, and wholly or partly owned by, Defendant Dr. Park, is organized and exists as a limited liability company under the laws of the State of New York, and has its

principal place of business at 2029 Jericho Turnpike, New Hyde Park, NY 11040.

25.     The CityMD Defendants, East Coast Urgent Care Physicians, PPLC; Murray Hill Urgent Care, PLLC, and StatMD, are hereinafter collectively referred to as the "Defendant Medical Practices".

<u>Defendant Partners</u>

26.     To distinguish them from the Defendant Principals, Doctors Brosnan, Liu, Kahoun, Kapoor, Khan, Mazer, Pastula, Shami, Shih, Fu, Mukherji, Narang and Albertini are collectively referred to as the "Defendant Partners".

27.     Defendant Michelle Brosnan, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Bronson is a doctor of medicine licensed in the State of New York whose principal areas of practice are primary care and emergency medicine. Dr. Brosnan primarily works out of the Defendant CityMD facility, is also affiliated with Huntington Hospital in Huntington, NY, and resides in Forest Hills, NY.

28.     Defendant Jack Hwaijong Liu, M.D, is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Liu primarily works out of the Defendant CityMD facility.  Dr. Liu is a doctor of medicine licensed in the State of New York whose principal areas of practice are emergency medicine and internal medicine, and resides in Queens, NY.

29.      Defendant John Kahoun, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Kahoun is a doctor of medicine licensed in the State of New

York whose principal areas of practice are primary care and emergency medicine, and resides in Brooklyn, NY.

30.     Defendant Tushar Kapoor, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies. Dr. Kapoor is a doctor of medicine licensed in the State of New York whose principal areas of practice are primary care and emergency medicine, who primarily works out of the Defendant CityMD facility but is also affiliated with the Nassau University Medical Center and North Shore University Hospital, and resides in Westbury, NY.

31.     Defendant Faiz Khan, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies. Dr. Khan is a doctor of medicine licensed in the States of New York and Pennsylvania whose principal areas of practice are emergency medicine and internal medicine. While Dr. Khan primarily works out of the Defendant CityMD facility, he is also the Vice Chair and Head of Academic Affairs for the Department of Emergency Medicine at Nassau University Medical Center, where he is affiliated.  He resides in Dix Hills, NY.

32.     Defendant Gary Mazer, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Mazer is a doctor of medicine licensed in the State of New York whose principal areas of practice are emergency medicine and internal medicine, primarily works out of the Defendant CityMD facility, and resides in Great Neck, NY.

33.     Defendant Leonard Pastula, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Pastula is a doctor of osteopathic medicine licensed

in the States of New York, New Jersey, and Georgia, and whose principal areas of practice are primary care and emergency medicine.  Dr. Pastula primarily works out of the Defendant CityMD facility but is also affiliated with the Saint Charles Hospital in Port Jefferson, NY, and resides in Old Brookville, NY.

34.     Defendant Nedal Shami, M.D., is a co-owner with Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Shami is a doctor of medicine licensed in the States of New York and New Jersey whose principal area of practice is emergency medicine and primarily works out of the Defendant CityMD facility but is also affiliated with St. Luke's Roosevelt in New York City, NY and Valley Hospital in Ridgewood, NJ.  He resides in Westbury, NY.

35.     Defendant David Yu-Chin Shih, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Shih is a doctor of medicine licensed in the State of New York whose principal areas of practice are primary care and emergency medicine. He primarily works out of the Defendant CityMD facility but is also affiliated with several other hospitals in the greater New York area, and resides in Westbury, NY.

36.      Defendant Le K. Fu, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Fu is a doctor of medicine licensed in the State of New York whose principal areas of practice are primary care and emergency medicine.  He primarily works out of the Defendant StatMD facility, and resides in New York, NY.

37.     Defendant Pinaki Mukherji, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those

professional limited liability companies.  Dr. Mukherji is a doctor of medicine licensed in the State of New York whose principal areas of practice are internal medicine and emergency medicine. He primarily works out of the Defendant StatMD facility, and resides in Valley Stream, NY.

38.     Defendant Vibhu Narang, M.D., is a co-owner with Defendant Dr. Park of one or more of the Defendant Medical Practices, being a member in one or more of those professional limited liability companies.  Dr. Narang is a doctor of medicine licensed in the State of New York whose principal areas of practice are internal medicine, critical care medicine and emergency medicine.  He primarily works out of the Defendant StatMD facility, and resides in Glen Oaks, NY.

39.     Defendant Francis J. Albertini, M.D. is a co-owner with Defendant Dr. Park of Defendant StatMD, being a member of that professional limited liability company.  Dr. Albertini is a doctor of medicine licensed in the State of New York whose principal area of practice is internal medicine.  He primarily works out of the Defendant StatMD facility, and resides in Floral Park, NY.

## FALSE CLAIMS ACT

40.     Federal law prohibits falsely representing that work has been performed that was not in fact performed, or making misrepresentations in order to obtain payment of Federal funds to which a party is not entitled. 31 U.S.C.A. §§ 3729 *et seq.*

41.     The FALSE CLAIMS ACT is the primary law on which the federal government relies to recover losses caused by fraud.  Avco Corp. v. Dept. of Justice, 884 F.2d 621, 622 (D.C. Cir. 1989).  The FCA creates civil liability for making a false claim for payment by the government:

Any person who-

(A)   knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B)   knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

[…]

(G)   knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government […]

31 U.S.C. § 3729(a)(1).  The FCA also permits private citizens to bring qui tam suits to enforce the FCA. Id. § 3730(b).

42.     The Supreme Court has stated that Congress intended that the FCA be broadly applied to protect government funds and property from fraudulent claims.  U.S. v. Niefert-White Co., 390 U.S. 228 (1968).

### NEW YORK'S FALSE CLAIMS ACT

43.     As the FCA imposes civil liability for the presentation to the Federal Government of a false claim for payment, the NYFCA mirrors the FCA, imposing liability for presentation of false claims to the government of New York. It imposes civil liability on,

Any person who […]:

(a)   knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.

(b)   knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

[…]

(g)   knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or local government; or

(h)  knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state or a local government, or conspires to do the same.

N.Y. STATE FIN. Law §189(1).  The NYFCA permits private persons to bring an action on behalf of the State.  N.Y. STATE FIN. Law §190(2).

## FACTS OF CASE

### *Systematic Searching by Defendants Biber and PPMA for Program Vulnerabilities*

44.     Formed in 2008 by Defendant Biber, Defendant PPMA, as mentioned *supra*, provided billing and physician management services to providers and other health care organizations.  At the time Relator Bevilacqua worked for PPMA, the billing company had a contract to assist Defendants CityMD and StatMD in billing the Medicare, Medicaid, and NYSHIP programs in the State of New York, as well as private health insurance companies.

45.     Under Defendant Biber's direction, Defendant PPMA systematically searched for and identified potential and existing flaws in the Medicare, Medicaid, NYSHIP and other Federal and State health care reimbursement systems, which permitted PPMA to develop and refine over-billing procedures, and thereby exploit such systems for Defendant Dr. Park and the medical practices controlled by him.

46.     As described above, Dr. Park retained Defendant Biber's services to oversee billing functions when he terminated Defendant PPMA's billing contract, and moved the billing function for the Defendant Medical Practices into Defendant CPGNY.  At least partly for this reason, the fraudulent coding and billing practices complained of herein which were begun during the term of PPMA's contract services, continued after CPGNY took over the coding and

billing.

### *Medical Coding and Billing Frauds*

<u>Upcoding by Billing High-Level E/M Codes Without Recording Past, Family and Social History</u>

47.     Medicare and Medicaid pay greater or lesser amounts for evaluation and management ("E/M") services according to the complexity of the service and the amount of work required.   The different degrees of complexity and amounts of work covered by the respective codes are referred to as "levels of service". There are five (5) levels of E/M services, numbered 1 through 5[3].

48.     Each level of E/M service is identified by a service or "CPT" code defined in the American Medical Association's *Current Procedural Terminology manual* ("CPT Manual")[4]. One necessary element of all E/M services is a patient history.  To justify billing for higher level E/M services, a provider must obtain and record a more thorough patient history.  For new patients, E/M service levels 3-5 require the patient history to be a Past, Family, and/or Social History ("PFSH"). For established patients, E/M service levels 4 and 5 require the patient history to be a PFSH.

49.     "Upcoding", as defined by the Office of Inspector General of the Department of Health and Human Services, is "billing for a more expensive service than the one actually

---

[3] The level of the E/M service is denoted by the last digit in the CPT Code for the service. For example, a Level 1 service to a new patient in a physician's office setting (which is how E/M services are coded for Urgent Care facilities such as the Defendants) is Code 99201, a Level 2 service is 99202, and so on to Level 5. For established patients, a Level 1 service is 99211, and Level 2 is 99212, and so on.

[4] This manual is re-published annually. In the 2012 CPT Manual, E/M service codes are defined on pages 4-41, with the codes for services to new patients beginning on page 11. The patient history requirements for E/M services are set forth in the *Evaluation and Management (E/M) Services Guidelines* portion of this manual, under the topic "Instructions for Selecting a Level of E/M Service". In the 2012 version of the manual, which governs most of the services at issue, the patient history requirements appear on pages 9-12.

performed."[5]  For example, a physician intentionally bills a higher E/M code than justified by the E/M service he or she actually renders to the patient.  Upcoding also occurs where there is a pattern or practice of presenting claims for items or services that the presenter knows or should know will produce a greater payment than the code applicable to that item or service.

50.     Defendants PPMA, CPGNY and the Defendant Medical Practices systematically and knowingly submitted claims for payment to Medicare, Tricare, Medicaid, NYSHIP and other Federal and New York State health care programs for E/M services to new patients under billing codes 99203, 99204 and 99205, knowing they had not recorded any Past, Family, and/or Social History in the beneficiaries' medical record.  For example, on Jan. 28, 2013, Patient 1[6] presented to Dmitry Ilyevesky, M.D., with complaints of left knee pain.  While the defendant subsequently performed an evaluation of Patient 1 and billed the service to Medicare under CPT Code 99203, Dr. Ilyevesky did not document *any* Past, Family, and/or Social History.  A copy of this visit note, and the resulting bill and proof of payment are attached as **Exhibit A**.  Similarly, on June 27, 2012, Patient 2 presented to Defendant Dr. Shih with acute dysuria.  Dr. Shih then performed an evaluation on this patient and billed the service under CPT Code 99204; nevertheless, Dr. Shih did not document a Complete Past, Family and Social History, which is required.  A copy of this visit note and the resulting bill are attached as **Exhibit B**.

51.     This fraudulent practice was not limited to new patients. Defendants PPMA, CPGNY and the Defendant Medical Practices systematically and knowingly submitted claims for payment to Medicare, Tricare, Medicaid, NYSHIP and other Federal and New York State

---

[5] OIG, *Compliance Program for Individual and Small Group Physician Practices*, 65 Fed. Reg. 59,434, 59,439 n. 20 (Oct. 5, 2000).
[6] The names and other Protected Health Information (as defined in HIPPA) of all Medicare and Medicaid beneficiaries mentioned herein and in the exhibits hereto are redacted. A reference list naming such beneficiaries and listing their identifiers has been provided to the United States of America and the State of New York, and will be separately filed with this Court under seal pursuant to Rule 5.2(g) of the Federal Rules of Civil Procedure.

health care programs for E/M services to *established* patients under billing codes 99213, 99214 and 99215, knowing they had not recorded any Past, Family, and/or Social History in the beneficiaries' medical record. For example, on August 25, 2011, Patient 3, an established patient, presented to Defendant Dr. Mazer with finger pain.  Dr. Mazer then performed an evaluation and billed the service under CPT Code 99214; however, Dr. Mazer did not document a Pertinent Past, Family and Social History, which is required. A copy of this visit note, with the bill to Medicare and proof of payment are attached as **Exhibit C**. Because no Past, Family, and/or Social History, either to the level of *Pertinent* or *Complete*, was recorded in the beneficiaries' medical record in any of the 3 above examples, the Defendants services did not meet the standards for the charges coded, should have been billed at a lower level of service, and therefore were upcoded. Defendants Dr. Park, Biber, and the Defendant Partners knowingly caused the Defendant legal entities to adhere to this fraudulent practice.

<u>Upcoding by Billing Services to Established Patients as New Patient Services</u>

52.     A "new patient" is defined as an individual who has not received any professional services from the physician/non-physician practitioner (NPP) or another physician of the same specialty who belongs to the same group practice within the previous three years.   An "established patient" is an individual who has received professional services from the physician/NPP or another physician of the same specialty who belongs to the same group practice within the previous three years[7].

53.     For many medical procedures and other services, including E/M services, Government health insurance programs pay providers more when they are rendered to new patients, than when rendered to established patients, due to the additional time and effort usually

---

[7] A.M.A. *Current Procedural Terminology* manual, initial page of section captioned "Evaluation and Management Service Guidelines."

required dealing with new patients.

54.      Defendants   PPMA,   CPGNY   and   the   Defendant   Medical   Practices systematically and knowingly submitted claims to Medicare, Medicaid, Tricare, NYSHIP and other Federal and New York State health care programs coded as services to new patients, knowing the subject beneficiaries were established patients.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to adhere to this fraudulent practice.  For example, on or about Nov. 19, 2010, Patient 4 presented to Defendant Dr. Albertini at the Defendant StatMD facility with left ankle pain, as indicated by a copy of this visit report which is attached as **Exhibit D**.  Dr. Albertini performed five separate services on Patient 4, one of which included an E/M service claim for a new patient (CPT Code 99204).  StatMD then billed Patient 4's New York State insurance payor, the New York City Law Department, for the 99204 new patient procedure.  However, the document numbered 755 in this exhibit shows that this patient had been in the defendants' care since April 7, 2010 at the latest. Since Patient 4 was not a new patient and StatMD should have billed the claim under an established patient CPT Code, for example, 99214.

55.      In certain cases, services to established patients were upcoded as new patient services when the patients changed health insurance carriers.  Upon information and belief, Defendants thereby took advantage of the fact that the new carriers had no records in their data bases of prior services by them to the patients, and therefore were less able to detect the upcoding.

56.      On or about late 2010, the Relator noticed that several established patients were billed as "new patients", which would utilize the CPT code "9920X" when the patient should have been billed under an established CPT code "9921X".  The Relator brought this to the

attention of Jane Schlossman, the office manager for Defendant PPMA.  Ms. Schlossman replied that Mr. Biber had instructed that if a patient changed insurance carriers at any time, the patient would be billed out to the new carrier under the new patient CPT code "9920X", regardless of the 36-month absence required to be deemed a "new patient."

Other Upcoding of E/M Services

57.    Defendants PPMA, CPGNY and the Defendant Medical Practices systematically and knowingly submitted claims for payment for high level E/M services, meaning those under CPT Codes 99203, 99204, 99205, 99214 and 99215 to Medicare, Medicaid, Tricare, NYSHIP and other Federal and New York State health care programs, knowing that the services rendered or the patient medical records created would not support charges at those levels.  The E/M services should have been coded at a lower level, such as 99201, 99202, 99211 or 99212 based on the information provided in the patient's medical record.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to adhere to this fraudulent practice.

58.    Defendants often advertised flu shots for $25, but they systematically billed level 3 E/M codes to Government health care programs for nothing more than routine flu shots.  For example, on or about Sept. 27, 2011, Patient 5 presented to Defendant Dr. Mazer at the office of Defendant CityMD to receive only a routine flu vaccination.  Nevertheless, Defendant CityMD billed Medicare Part B a CPT 99203 charge for high level E/M services. A copy of this visit report, and the resulting bill are attached as **Exhibit E**

59.    In other cases, Defendants PPMA, CPGNY and the Defendant Medical Practices billed patients' initial visits under code 99214, and then knowingly and systematically submitted claims for payment to Medicare, Medicaid, Tricare, NYSHIP and other Federal and New York

State health care programs for simple follow-up visits by the same beneficiaries under the same CPT code.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to adhere to this fraudulent practice.  As an example, on or about Aug. 20, 2012, Patient 6 presented to Defendant Dr. Wang at the office of Defendant StatMD to receive a tuberculosis (TB) skin test (PPD test).  StatMD billed this initial visit for Patient 6 under CPT Code 99214.  Two days later, on or about Aug. 22, 2012, Patient 6 returned to StatMD's office to only review the test results.  Nevertheless, StatMD also billed this follow-up visit – whereby the results of the patient's PPD test were simply read to determine if they were positive or negative – under CPT Code 99214. Copies of these visit reports, with resulting bills and proof of payment are attached as **Exhibit F.**

<u>Unbundling by Wrongful Appending of Modifier 25 to E/M Charges</u>

60.     "Unbundling", also known as "fragmentation", occurs when bills are submitted in a fragmented or piecemeal fashion in order to maximize the reimbursement for various procedures or tests that are normally required, pursuant to Medicare and Medicaid guidelines, to be billed together and therefore at a reduced cost.

61.     When E/M services which are normally bundled with a surgical or medical procedure are provided to the same patient on the same day by the same provider, the provider can, if justified by the circumstances, attach a "Modifier 25" to the E/M service, and bill and collect for it separately without bundling.  However, attachment of Modifier 25 is allowable and proper only if

> "… the patient's condition requires a significant separately identifiable E/M service above and beyond the other service provided or beyond the usual preoperative or postoperative care associated with the procedure that was performed". A.M.A. *Current Procedural Terminology* manual, Appendix A- Modifiers, Item 25.

62.     Defendants PPMA, CPGNY and the Defendant Medical Practices systematically and knowingly submitted claims for payment to Medicare, Tricare, Medicaid, NYSHIP and other Federal and New York State health care programs for E/M services with Modifier 25 appended, knowing such services i) should have been bundled with other services provided by them to the same patient on the same day for which they billed and were paid, and ii) were not significant and separately identifiable from the other services.  As an example, on or about January 5, 2012, Patient 7 presented to Defendant StatMD with a middle finger broken in a basketball game. Dr. Chester Wang x-rayed her fingers and splinted the fracture, for which StatMD billed The Empire Plan. It also however billed an E/M service, which was not separate and should have been bundled with the fracture splinting charge, under CPT Code 99214 with modifier 25.  A copy of this visit note, with bill to Empire Plan and evidence of payment, is attached as **Exhibit G**. Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to adhere to this fraudulent practice.

63.     The Defendants gave coding and billing instructions to their employees in the form of Billing Sheets which list payors in whose bills bundled E/M services must be unbundled by appending Modifier 25, without regard for separateness or lack of separateness. An example of these Billing Sheets, and a cover email showing its distribution is attached as **Exhibit H.** The Defendants changed these Billing Sheets from time to time, and the payors identified for this type of unbundling, but at various times they included Medicare, Medicaid, NYSHIP and other payors of Federal and New York State health care programs.  The Defendants' billing and coding personnel were required to comply with these Billing Sheets by the Defendants.

64.     On or about Oct. 28, 2011, the Relator sent Defendant Dr. Park an email with the

subject line, "-25 modifier" and with an attachment titled, "Using Modifier -25," advising Dr. Park to read the attachment to understand when Modifier -25 should be used.  The attachment provided a correct statement of when the modifier should – and should not – be used.  Nevertheless, as shown by **Exhibit I**, at least as late as Sept. 2012 it was the Defendants' stated policy to add the "-25" Modifier in all Government-pay E/M billings with multiple diagnoses, without regard for separateness or lack of separateness**.**

<u>Billing After-Hours Services Charge for Patients Seen During Posted Business Hours</u>

65.    Billing with after-hours add-on code 99050 enables providers to receive extra payments, over and above the payments for the care provided.  CPT code 99050 may be used to bill for after-hours services as an "add-on" to the appropriate E/M codes for a visit and is defined as "services provided in the office at times other than regularly scheduled office hours, or days when the office is normally closed (e.g., holidays, Saturday or Sunday), in addition to basic service."[8]  This code provides additional payments (from \$1 to \$200, based on 2008 MSIS data) to compensate providers for the additional costs (e.g., overtime, night differential) associated with providing services outside of posted normal business hours.  If for example, a physician's office posts it hours as 9 a.m. to 5 p.m. Monday through Friday, a physician treating a beneficiary in that office at 7 p.m. on a Thursday may bill for CPT code 99050, in addition to codes for the procedures performed in  the visit.

66.    Defendants PPMA, CPGNY and the Defendant Medical Practices systematically submitted claims for payment to Medicare Part C, Medicaid, Tricare, NYSHIP and other Federal and New York State health care programs, knowing that they included charges for Code 99050 after-hours services, and that the beneficiaries were seen during their posted business hours.

---

[8] A.M.A. Current Procedural Terminology manual, *Medicine, Special Services, Procedures and Reports* section, in the 2012 edition of this manual, Code 99050 is defined on page 529.

Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to adhere to this fraudulent practice.

67.    During the periods in question the CityMD Defendants had hours posted on their web site indicating that their offices were open in the evenings until 10 p.m. on both weekdays and weekends, the CityMD Defendants were regularly open during these time periods, and the "Doc-Tor.com" enrollment application for Defendant CityMD of Upper East Side dated Dec. 2, 2010, a copy of which is attached as **Exhibit J,** reflects that the office hours for this facility would be 8:00 a.m. to 10:00 p.m., Monday through Sunday. Nevertheless, these Defendants routinely billed Government health care programs for the 99050 add-on code and received payment for it, in cases when the patients were seen before 10 p.m.

68.    The Defendants used the employee instruction Billing Sheet attached as **Exhibit H** to implement the After-hours Services fraud described above.  In this and other Billing Sheets, Defendants Dr. Park, Biber and the Partner Defendants caused written instructions to be given periodically to their billing and coding personnel instructing the use of 99050 in bills to "all fee for service carriers" for services before 8 a.m., after 5 p.m. and on Holidays, Saturdays and Sundays.  The Defendants' billing and coding personnel are ordered to comply with these Billing Sheets by their employers.

69.    As an example, Patient 8 reported to the Defendant CityMD facility on December 23, 2012 with a cough. The patient received a New Outpatient E/M service (99203) at or around 10:56 a.m. which was during posted business hours. Nevertheless, the Defendant practice submitted a claim that included a charge for Code 99050. A copy of this visit note, the resulting bill and proof of payment are attached as **Exhibit K**.

70.    In another example, Patient 9 presented to Defendant Dr. Brosnan on December

22, 2012. The "Visit Information" page of the patient's medical records reflects that data was collected at "12:24:08 PM by Michelle Brosnan".  Yet, Defendant City Medical of Upper East Side included in Patient 9's insurance carrier bill the service code 99050. A copy of this visit note, with resulting bill and proof of payment are attached as **Exhibit L**.

Wrongful Billing of Facility Fees

71.     Urgent care facilities are normally considered a "walk-in" physician's office, not an emergency room.[9] Medicare Claims Processing Manual, Chapter 12, Section 20.4.2 makes clear no facility fee is payable in these cases. When urgent care facilities meets the definition of "hospital based clinic" however, a facility fee  is payable under some Government programs.

72.     An urgent care center meets the definition of "hospital-based clinic" as defined by Medicare regulations if it is located physically in the hospital building or on the hospital campus, is located "off campus" from the hospital and is either free-standing or located in a hospital ambulatory facility; or the urgent care center is a hospital joint venture. Normally, an urgent care facility uses in its bill a place of service code 10 (physician office) or 20 (urgent care facility). If it meets the definition of hospital based clinic, however, it can use place of service code 22 (outpatient hospital). Payors will generally not reimburse a facility fee when place of service codes 10 or 20 are used, so Defendants used place of service code 22 in certain claims to obtain payment of a facility fee.

73.     The Defendant Medical Practices are and at all relevant periods were not affiliated with any hospital, or otherwise entitled to use place of service code 22.

74.     Defendants PPMA, CPGNY and the Defendant Medical Practices systematically

---

[9]     Place of Service Code Set, available at http://www.cms.gov/Medicare/Coding/place-of-service-codes/Place_of_Service_Code_Set.html.

and knowingly submitted claims for payment to Medicare Part C, Tricare, Medicaid, NYSHIP and other Federal and New York State health care programs for facility fees, knowing such fees were not actually payable to them.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to adhere to this fraudulent practice.  For instance, on or about Jan. 18, 2012, Dr. Park sent an email attached as **Exhibit M** to Mr. Biber and other individuals at the Defendant legal entities informing them that they would "bill facility charges as we do for citymd" for the Defendant StatMD facility.

75.     In most cases, the Government plan administrators paid the facility fee amounts to the beneficiary patients, and provided an Explanation of Benefits statement to the Defendants indicating this was to occur, whereupon they billed and collected the relevant sums from the beneficiary patients. An example of this is shown in **Exhibit N** involving Patient 10, where Defendant StatMD billed and collected both a professional fee and a facility fee. The facility fee benefits were not properly payable to the beneficiary patients or the Defendants in such cases.

76.     The issue of billing a facility fee to Government-pay programs was discussed among the Relator and Defendants Biber and Dr. Park, as well as with Ms. Alice Park, Michelle DeSantis, and Elise Stiller, as early as mid-2011, and on or about Dec. 7, 2011, the Relator emailed Mr. Biber raising questions about the correctness of billing facility fees.  This practice continued at least into 2012, as shown by **Exhibit M**, and Ms. DeSantis was receiving emails from other staff members reporting that patients complaining about this practice.  In particular, on or about Jan. 20, 2012 Ms. DeSantis received an email from Mr. Arleigh Jan Baloncio, an employee at the Defendant City Medical of Upper East Side facility, saying that Patient 12 had complained that the Defendant CityMD of Upper East Side should not be charging him like an ER (emergency room); and a copy of this email is attached as **Exhibit P.**  Furthermore, on or

about Feb. 9, 2012, Mr. Baloncio informed Dr. Park that he and another employee had been attempting over the previous few days to "pacify" concerns of Patient 11 regarding facility fee charges. A copy of the relevant email is attached as **Exhibit O,** and it shows that the patient accused the Defendants of conducting an "illegal practice" and was "threatening to talk to her lawyers" regarding this practice.  Yet, as shown by **Exhibit Q**, Dr. Park continued to instruct that facility fees would be charged to the "smaller esoteric insurance companies" for all patients who were served at the Defendant StatMD facility.

77.    The CMS-1500 form is the standard paper claim form prescribed by the Centers for Medicare and Medicaid Services ("CMS") for use by a non-institutional provider or supplier to bill Medicare carriers.[10]  It is also used for billing purposes by some Medicaid State Agencies. The CMS-1450 form, also known as the UB-04, is used by an institutional provider to bill a Medicare Administrative Contractor.[11]   In addition to billing Medicare, the Form 1450 is also used to bill various government and some private insurers.

78.    Defendant Dr. Park and his employees had direct confirmation from the United HealthCare Insurance Company of New York, a NYSHIP carrier and a Medicaid payor, as early July 2011 and pursuant to its "Physician & Provider Manual", that "facility charges" are not payable to urgent care centers such as the Defendants' facilities, after it billed a new patient code (e.g., 99203) or urgent care code (e.g., S9083) on a HCFA 1500 Claim Form for its professional services, but then also billed a facility fee on a CMS-1450. The relevant text of this Manual, and a subsequent letter from the NYSHIP administrator stating this rule in connection with services to Patient 7, are attached as **Exhibit R.**  Defendants also received denial of payments by the

---

[10] "Professional paper claim form (CMS-1500)", http://www.cms.gov /Medicare/Billing/ElectronicBillingEDITrans /16_1500.html.

[11] "Institutional paper claim form (CMS-1450)", http://www.cms.gov/Medicare/Billing/ElectronicBillingEDITrans /15_1450.html.

NYSHIP based on the Defendants' facility fee charges, yet Defendants continued to bill this fee. In particular, on Nov. 12, 2012, Ms. DeSantis in the email is attached as **Exhibit S** advised Relator Bevilacqua and other employees to continue billing the facility fee.

79.     The Defendants attempted to conflate *certification by an urgent care facility national association* with *affiliation with a hospital*, to create the illusion they were lawfully able to bill for facility fees.  In the email attached as **Exhibit R** where Defendant Dr. Park told his staff to bill all facility fees to the "smaller esoteric insurance companies," they were supposed to do this starting from the date they received notice of Urgent Care of Association of America certification.  As an example of use of this, on or about Sept. 2, 2012, this certification was communicated to a patient who had complained about the facility fee, as the justification for it, as shown in **Exhibit O**.

80.     Because of their awareness that facility fees were not legally payable to their type of facility, the Defendants adjusted their facility fee billing practices frequently to evade detection.  For example, by email dated Nov. 6, 2012, a copy of which is attached as **Exhibit T,** Defendant CityMD advised its employees that it would continue to bill facility fees to its patients.  On or about Nov. 11, 2012, CityMD instructed its employees to waive the facility fee for NYSHIP, but only if it "goes to the PT's deductible", i.e., is payable by the patient; a copy of this email is attached as **Exhibit S**.  Specifically, they were advised to only bill the patient for what the insurance carrier paid directly to the patient.  Nonetheless, CityMD continued to bill the facility fees to NYSHIP despite its awareness that billing such fees was improper.

<u>Double Billing Workmen's Compensation Claims</u>

81.     The practice of "double billing" occurs where the provider charges one payor more than once for the same service, or charges two separate payors for the same service.

27

82.     Defendants PPMA, CPGNY and the Defendant Medical Practices systematically and knowingly submitted claims for payment to Medicare and the Empire Plan UHC, a NYSHIP carrier and a Medicaid payor, for services that they knowingly billed to and were paid for by the relevant beneficiaries' workman's compensation carriers.  Defendants Dr. Park, Mr. Biber, and the Partner Defendants knowingly caused the Defendant legal entities to adhere to this fraudulent practice.

<u>Use of False National Provider Identification Numbers for Attending Physicians</u>

83.     The National Provider Identifier (NPI) is a unique 10-digit number identifying covered health care providers.  Every covered health care provider, health care plan, and health care clearinghouse must use its NPI for identification in each administrative and financial transaction in any Government health care program.

84.     All or substantially all claims forms for Government health care programs require the listing of the NPI of either the individual clinician who physically rendered the services being billed, or the individual physician who referred the patient for the services, in addition to the NPI of the provider submitting the bill.

85.     Defendants PPMA, CPGNY and the Defendant Medical Practices systematically submitted claims for payment to Medicare, Medicaid, Tricare, NYSHIP and other Federal and New York State health care programs, knowing that such claims listed as the rendering or the referring physician individuals who had not actually rendered or referred the patient for the subject service.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to adhere to this fraudulent practice.  For example, on or about Aug. 16, 2011, Patient 13 presented to Defendant Dr. Mazer at the office of Defendant CityMD with an acute exposure. Dr. Mazer performed three separate services on Patient 13, which included a

new outpatient E&M service (CPT Code 99203) as well as administration of a Zoster vaccine (CPT Codes 90736 and 90471).  Nevertheless, CityMD billed Medicare for these services performed on Patient 13 under Dr. Park's NPI.  A copy of this visit report, the resulting bill and evidence of payment are attached as **Exhibit U**.

86.     The Defendants conducted an additional practice using a false NPI number.  Here, the Defendants billed under the various physician Partner Defendants in the Defendant practices for services provided by non-partner physicians.  For example, on or about Feb. 19, 2013, Patient 14 presented to Defendant Dr. Shih with acute mucosal bleeding from her lower teeth.   In response, Dr. Shih performed three separate services on Patient 14, which included non-selective Wound Care (CPT Code  97602), an INR (a blood clotting test) (CPT Code 85610), and an established patient E/M service (CPT Code 99215).  Nevertheless, as listed on the Patient's CMS 1500-Health Insurance Claim Form[12], the services were billed under Defendant Dr. Mazer's NPI number. A copy of this visit report, the bill to Medicare and evidence of payment are attached as **Exhibit V**.

87.     The Billing Sheets described above in connection with other frauds were also used by Defendants Dr. Park, Mr. Biber and the Partner Defendants, as written instructions given periodically to their billing and coding personnel listing, for each Government or private payor, the names of one or more individual physicians who must be listed in bills to that payor as the rendering or referring physician (as applicable), in the place and instead of the actual rendering or referring physician.  The Defendants' billing and coding personnel were ordered to comply with these Billing Sheets by the Defendants.  For example, on or about June 20, 2013, Michelle DeSantis, the billing supervisor at CPGNY, emailed to the Defendants' billing and coding

---

[12] The CMS-1500 form is the standard claim form used by a non-institutional provider or supplier to bill Medicare.

personnel a revised Billing Sheet which lists the names of individual physicians who are to be listed as the rendering or referring physician in place of the actual person, for Medicare, The Empire Plan, and numerous other payors.  This email and Billing Sheet are attached as **Exhibit H**.  Ms. DeSantis was acting within the scope of her employment, on the instructions of Dr. Park and Mr. Biber, and with the knowledge of the Defendant Partners.

88.     As early as October or November 2011, the Relator called Defendant Dr. Park's attention to the fact that several patients' CMS 1500 listed him as the rendering physician when another physician had seen the patient.  Nevertheless, this practice continued.  For example, in mid-2012, the Relator conversed with Ms. Carrie Genrich, the operations manager for Defendant StatMD, regarding this practice.  Ms. Genrich informed the Relator that the Defendant Practice had always billed under physicians who were not actually practicing in a particular location but who were nevertheless owners.  In addition, in late 2012, when the Relator again brought up this problem, Ms. Genrich advised the Relator that the Defendant Practice often had a nurse practitioner or physician assistant see a patient while the patient's CMS 1500 reflected that an actual physician had rendered care.  Even as late as March 2012, Defendant Biber was advising StatMD staff to bill insurance companies with Dr. Park as the rendering clinician when the patient had been seen by another physician; a copy of the relevant email is attached as **Exhibit W.**  In fact, the practice continued through September 2013, when Ms. Genrich continued to field calls from concerned patients that their EOBs reflected bills for physicians that the patient had not seen. An example of this is shown in the email concerning Patient 15 attached as **Exhibit X.**

<u>Routinely Waiver of Deductibles and Co-Payments</u>

89.     Government health care programs contain provisions for deductibles and co-

payments in connection with the services provided.[13]  A "deductible'" is the amount that must be paid by a beneficiary before the insurance payor will pay for any items or services for that patient.  A "co-payment" is the flat dollar amount the insured party is required to pay up front for medical services rendered.  The remaining cost is then paid by the insurance carrier or carriers.  Absent a determination that the beneficiary faces substantial hardship, or that beneficiary cost-sharing amounts are not collectible, a provider may not waive co-payment amounts.  A provider must also make reasonable efforts to collect these amounts before determining that they are uncollectible.[14]

90.    Defendants PPMA, CPGNY and the Defendant Medical Practices systematically and knowingly submitted claims for payment for medical services to Medicare, Medicaid, Tricare, NYSHIP and other Federal and New York State health care programs, knowing that payments of deductibles or co-payments were due from the beneficiaries, and knowingly failing to bill for, make any other reasonable effort to collect, or make any determination of collectability or hardship for the deductibles or co-payments.  PPMA, CPGNY and the Defendant Medical Practices systematically and knowingly wrote off beneficiary deductibles and co-payments prior to billing for, making any other reasonable effort to collect, or making any determination of collectability or hardship for them.  Defendants Dr. Park, Biber, and the Defendant Partners knowingly caused the Defendant legal entities to adhere to this fraudulent practice.

91.    The Defendants' frequently changed which Government health care programs' co-pays and deductibles they waived, by instructions to their billing and coding staff delivered via email.  For example, on or about Feb. 13, 2012, Defendant Dr. Park sent an email instructing

---

[13] See, e.g. 42 U.S.C. §§ 1395e and 13951.
[14] See, e.g. Medicare Carrier Manual § 5220.

his staff to waive all co-pays for all claims to United Healthcare, which is the administrator of certain NYSHIP programs, a copy of which is attached as **Exhibit Y**.  This email acknowledged the illegality of this practice by noting "…we run the risk of getting caught."  If a patient was going to refuse to be seen because of this, Dr. Park advised his staff to tell them that since they are already in the office, they will see them and charge them the regular specialist co-payment for United Healthcare, and will not bill their insurance.  On or about July 11, 2012, Defendants' billing supervisor Michelle DeSantis sent an email, a copy of which is attached as **Exhibit Z,** instructing staff to waive co-payments for all health care programs except Medicare[15].  On or about Nov. 6, 2012, Ms. DeSantis sent another email instructing staff to write-off all balances on the books for Code 99050 charges (after-hours service charge); and a copy of this email is attached as **Exhibit T**.  These balances included co-payment amounts, which at that time had never been billed to the patients; and no determination of collectability or hardship had been made.  On or about Feb. 11, 2013, Ms. DeSantis sent an email instructing staff not to "balance bill" patients covered by Oxford Healthcare, a Medicare Part C payor, for deductibles or co-payments, a copy of which is attached as **Exhibit AA**.

92.     The Defendants used the abbreviation "ACAS" as an instruction to waive a co-payment or deductible without making any collection effort or hardship determination.  This term was formed from the first two letters of each of the words "ACcept ASsignment," which means "Accept assignment of benefits in full satisfaction of the charges".  For example, on or about Sept. 4, 2012, Defendant StatMD billed The Empire Plan/UHC, a NYSHIP payor, for services to Patient 6 on Aug. 22, 2012, and copies of the documents are included in **Exhibit F**.  StatMD waived the co-payment for this service, as shown by a memo included in that exhibit,

---

[15] The reference to Medicare was understood to mean regular Medicare (fee-for-services programs,Parts A and B), not its managed-care programs (Part C).

from Wanda Ramos, a biller for StatMD, which referred to this claim and noted "ACAS."  In 2012 and 2013, while Relator Bevilacqua was employed by Defendant Dr. Park, Relator Bevilacqua and other employees of Defendants CityMD and StatMD were repeatedly told by their employers to waive deductibles or co-insurance by writing them off and never billing the patients.  Later, they were told to "Accept Assignment" of the Medicare benefit; specifically, they were told to create bills for deductibles and co-payments, but neither to send them for payment nor write them off. Dr. Park implied that such bills might be submitted to the patients at a future date, but this did not happen. For example, on or about Apr. 1, 2012, Defendant Dr. Park told Defendant Biber in an email attached as **Exhibit BB** not to collect patients' deductibles, but not to write them off the practices' books of accounts either, just to leave the outstanding charges in the system.  The same instructions were given on or about May 15, 2012 to the Relator and other employees by email, as shown in **Exhibit CC**.

93.     The Relator expressed concerns over the illegality of systematic waivers of Medicare and Medicaid co-payments in a series of conversations with Defendants Biber and Dr. Park starting on or about the Spring of 2011.  In response to these conversations, Mr. Biber took the position that the Defendants should waive co-payments and deductibles above $125.  Dr. Park was unsure if this practice was prudent, and he and Mr. Biber vacillated on whether to continue.  By late Spring or early Summer 2011, Dr. Park settled on the matter.  He instructed the Defendants' billing staff not to bill for co-payments and deductibles over $50.  However, the Relator continued to be concerned that this was unlawful, and on or about Oct. 8, 2011, Relator sent Dr. Park an email that included a link to a web site titled, "Check out Automatic Waiver of Co-pays/Co-insurance: Is Your Office Exposed to Fraud Allegations or Civil Liability? – Law

Fi."[16]  In her email, the Relator advised Dr. Park that he should "take a look" at the article.  In particular, the article explains how routinely waiving co-pays, co-insurance, and deductibles is unlawful.

94.    On or about May 4, 2012, Defendant CityMD employee Michelle DeSantis instructed Relator Bevilacqua and other employees of CityMD and Defendant StatMD via email to limit the co-payment collection amounts to what the patient paid at the time of service, and to cap any co-payment at $50, a copy of which is attached as **Exhibit DD**.  For CityMD only, Ms. DeSantis also instructed the employees to waive all co-payments for UHC-covered patients and to waive co-payments for NYSHIP patients who see providers other than Defendants Dr. Park and Dr. Mazer.

95.    On or about July 11, 2012, Ms. DeSantis instructed Relator Bevilacqua and other employees of Defendants CityMD and StatMD to waive all patient deductible or co-insurance amounts, no matter the insurance provider, with the exception of Medicare Parts A and B; a copy of this email is attached as **Exhibit EE**.  In each instance, Ms. DeSantis was acting within the scope of her employment, on the instructions of Defendants Dr. Park and Mr. Biber, and with the knowledge of the Defendant Partners.

96.    The Defendants sent numerous other email instructions to manage the waiver of co-payments and deductibles, some of which are attached as **Exhibit FF**. The Defendants' employees were not always able to conform to these shifting instructions of what to bill and what to waive, so they do not necessarily show which co-payments and deductibles were being waived in which periods.  These instructions do show, however, that the Defendants actively refined and

---

[16] While the link provided in the email is no longer operational, the original article, "NY County Medical Society - Automatic Waiver of Co-pays/Co-Insurance: Is Your Office Exposed to Fraud Allegations or Civil Liability?", is now available at http://www.abramslaw.com/publication_and_media_view.aspx?ref=1111. Last accessed on 06/26/14.

managed the waiver process, which they perceived to give them an advantage in attracting patients.

### Wrongful Acts by Individual Defendants

97.     Defendants Biber and Dr. Park knowingly caused PPMA, CPGNY and the Defendant Medical Practices to present the above false claims to Government health care programs and make false records and statements material to such claims, by devising the fraudulent practices and instructing their employees to put them into effect.  Dr. Park and the Defendant Partners knowingly caused PPMA, CPGNY and the Defendant Medical Practices to present the above false claims to Government health care programs and make false records and statements material to such claims, by performing medical services to be billed as false claims, or signing (electronically and otherwise) CMS Form 1500 and other billing forms embodying such claims, in each case knowing the resulting claims, records or statements (as applicable) to Federal and New York State health care programs were false.

## DEFENDANTS' VIOLATIONS OF THE FALSE CLAIMS ACT

### Summary of Violations

98.     Upcoding by Billing High-Level E/M Codes without Recording PFSH.  By knowingly billing services under Level 3, 4 or 5 new patient E/M service codes or Level 4 or 5 established patient E/M service codes, when no PFSH was recorded in the patients' medical records, CPGNY, PPMA and the Defendant Medical Practices knowingly defrauded the United States and the State of New York by knowingly submitting false claims for the E/M services, and knowingly making and using false records and statements material to such claims.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to present such claims and make and use such records and statements. The claims were false

because they should have been billed under lower E/M codes, and were therefore upcoded.  The false records and statements were the CPT codes being charged in the bills.  These records and statements were false because they reflected a different level of service than actually provided.

99.    <u>Upcoding by Billing Services to Established Patients As New Patient Services</u>. By knowingly billing services to established patients under new patient CPT codes, CPGNY, PPMA and the Defendant Medical Practices knowingly defrauded the United States and the State of New York by knowingly submitting false claims for the services to the established patients, and knowingly making and using false records and statements material to such claims. Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to present such claims and make and use such records and statements. The claims were false because the services billed were not provided.  The false records and statements were the CPT codes being charged in the bills.  These records and statements were false because they did not reflect the services actually provided.

100.    <u>Other Upcoding of E/M Services</u>.  By knowingly and systematically billing new and established patient E/M services at code levels either not supported by the services actually rendered, or not supported by the documentation in the patients' medical records, CPGNY, PPMA, and the Defendant Medical Practices defrauded the United States and the State of New York by knowingly presenting false claims for such services, and making and using false records and statements material to such claims. Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to present such claims and make and use such records and statements.  The claims were false because they were knowingly coded incorrectly, and were therefore not legally payable for the services billed.  The false statements were the service codes being billed.  They were false because they did not reflect the services actually

provided.

101.   <u>Unbundling by Wrongful Appending of Modifier 25 to E/M Charges</u>.   By knowingly appending Modifier 25 to E/M service codes knowing that i) the services were such as are normally bundled with other services billed the same day for the same patient, and ii) that they were not significant and separately identifiable from the other services being billed, CPGNY, PPMA and the Defendant Medical Practices knowingly defrauded the United States and the State of New York by knowingly submitting separate claims for the E/M services, and knowingly making and using false records and statements material to such claims.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to present such claims and make and use such records and statements. The claims were false because the E/M services should have been bundled with the other services billed, and were therefore not separately payable.  The false records and statements were the Modifier 25 entries. These records and statements were false because there was no evidence reflected in the patient records of separateness of the E/M services.

102.   <u>Billing After Hours Services Charge for Patients Seen During Posted Business Hours</u>.  By knowingly billing after hours services Code 99050 for services provided during posted business hours, CPGNY, PPMA and the Defendant Medical Practices knowingly defrauded the United States and the State of New York by knowingly submitting false claims for such after-hours services, and knowingly making and using false records and statements material to such claims.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to present such claims and make and use such records and statements. The claims were false because no after-hours services were provided, and the claims were therefore not legally payable.  The false records and statements were the 99050 codes being

charged in the bills.  These records and statements were false because no 99050 services were actually provided.

103.    <u>Wrongful Billing of Facility Fees</u>.  By knowingly and systematically billing a facility fee as well as fees for their services, CPGNY, PPMA, and the Defendant Medical Practices defrauded the United States and the State of New York by knowingly presenting false claims for such facility fees, and knowingly making and using false records and statements material to such claims.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to present such claims and make and use such records and statements.  The claims were false because they were not legally payable due to the Defendants' facilities not being hospital-based.  The false records and statements were the statements in the bills of the type of facility submitting them.  These records and statements were false because the Defendants are not hospital based facilities.

104.    <u>Double Billing Workmen's Compensation Claims</u>.   By knowingly billing Medicare and Medicaid for claims also submitted to and paid by the beneficiaries' workmen's compensation carriers, CPGNY, PPMA and the Defendant Medical Practices knowingly defrauded the United States and the State of New York by knowingly submitting false claims for the subject services.  Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to present such claims and make and use such records and statements. The claims were false because they were properly billable to the workmen's compensation carriers, and were therefore not legally payable by Medicare or Medicaid.

105.    <u>Use of False National Provider Identification Numbers for Attending Physicians</u>. By knowingly using a false NPI number and / or a false name in their bills to identify the individual physician providing services to or referring the beneficiaries, CPGNY, PPMA and the

Defendant Medical Practices defrauded the United States and the State of New York by knowingly presenting false claims for the services reflected in such bills, and making and using false records and statements material to such claims.   Defendants Dr. Park, Biber and the Defendant Partners knowingly caused CPGNY, PPMA and the Defendant Medical Practices to present such false claims and make and use such false records and statements.   In cases where the physician providing the services was not credentialed by the Government health care program being billed, the claims were false because the services were not legally payable.   In all cases, the false records and statements were the NPI number and/or name of the rendering or referring physician.   The records and statements were false because another physician actually rendered the service or referred the patient.

106.   <u>Routine Waiver of Deductibles and Co-Payments</u>.   By systematically failing to bill for, waiving and writing off co-payment and deductible charges without determining their collectability or any hardship they would occasion to the beneficiary, the Defendant Medical Practices defrauded the United States and the State of New York by knowingly presenting false claims for the subject services, and making and using false records and statements material to such claims.   Defendants Dr. Park, Biber, and the Partner Defendants knowingly caused the Defendant legal entities to present such claims and make and use such records and statements. The routine waiver of co-payments or deductibles by charge-based providers, practitioners, or suppliers for services performed for recipients of such services is unlawful because it results in (1) false claims, (2) violations of the anti-kickback statute, and (3) excessive utilization of items and services paid for by Medicare.[17]   The claims are false because the provider is not entitled to collect them without either billing for the corresponding deductibles and co-payments, or

---

[17] OIG, *Special Fraud Alert* (Dec. 1994), available at https://oig.hhs.gov/fraud/docs/alertsandbulletins/121994.html.

determining their collectability and the hardship they would occasion to the subject beneficiaries. The false statements and records are the Defendants' statements of their charges for the services, because a provider that routinely waives co-payments or deductibles is actually charging less than the amount being placed in its bills. For example, if a provider claims that its charge for a procedure is $100, but routinely waives the $20 copayment, the actual charge is $80. The Government health care program should be paying 80 percent of $80 (or $64), rather than 80 percent of $100 (or $80). As a result of the provider's false statements and records, the payor program is paying $16 more than it should for this item.[18] [19]

## COUNT I

### 31 U.S.C. § 3729(a)(1)(A) and (B)
### Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices
### Upcoding by Billing High-Level E/M Codes Without Recording PFSH

107.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein.

108.     Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims in order to obtain payment for New Patient Evaluation and Management services under CPT Codes 99203, 99204 and 99205, and Established Patient Evaluation and Management services under CPT Codes 99214 and 99215, which claims were false because the Defendants did not record any past, family or social history of the patients in connection with such services, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

---

[18] For an HHS-OIG description of this fraud, see https://oig.hhs.gov/fraud/docs/alertsandbulletins/121994.html.
[19] For a NY State government description of this fraud, see http://www.dfs.ny.gov/insurance/ogco2008/rg080404.htm.

109.     Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for New Patient Evaluation and Management services under CPT Codes 99203, 99204 and 99205, and Established Patient Evaluation and Management services under CPT Codes 99214 and 99215, which claims were false because the Defendants did not record any past, family or social history of the patients in connection with such services, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

## COUNT II

**31 U.S.C. § 3729(a)(1)(A) and (B)**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices**
**Upcoding by Billing Services to Established Patients As New Patient Services**

110.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein.

111.     Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims in order to obtain payment for new patient Evaluation and Management services, which claims were false because the services were rendered to established patients, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

112.     Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for

new patient Evaluation and Management services, which claims were false because the services were rendered to established patients, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

## COUNT III

### 31 U.S.C. § 3729(a)(1)(A) and (B)
### Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices
### Other Upcoding of E/M Services

113.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 112 as if fully set forth herein.

114.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims in order to obtain payment for upcoded E/M services, which claims were false because they did not reflect the services actually rendered, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

115.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for upcoded E/M services, which claims were false because they did not reflect the services actually rendered, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

## COUNT IV

### 31 U.S.C. § 3729(a)(1)(A) and (B)

**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the
Defendant Medical Practices
Unbundling by Wrongful Appending of Modifier 25 to E/M Charges**

116.   Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

117.   Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims using Modifier 25 in order to obtain separate payment for evaluation and management services which would otherwise be bundled with and therefore not payable separately from other services being billed with such claims, when there was no separateness of the evaluation and management services from the other services. Such claims were false because the evaluation and management services were not separately payable; and such Defendants thereby caused damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

118.   Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices (a) knowingly caused to be presented to agents of the United States Government claims using Modifier 25 in order to obtain separate payment for evaluation and management services otherwise bundled with other services being billed with such claims, when there was no separateness of the evaluation and management services from the other services, such claims being false because the evaluation and management services were not separately payable; and (b) knowingly made, used and caused to be made and used false records and statements material to such claims; thereby in each case causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

**COUNT V**

**31 U.S.C. § 3729(a)(1)(A) and (B)**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the**
**Defendant Medical Practices**
**Billing After-Hours Services Charge for Patients Seen During Posted Business Hours**

119.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

120.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims in order to obtain payment for after hours urgent care services under CPT code 99050, when the patients were seen during posted business hours, which claims were false because the services billed were not provided, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

121.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for after hours urgent care services under CPT code 99050, when the patients were seen during posted business hours services, which claims were false because the services billed were not provided, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

### COUNT VI

**31 U.S.C. § 3729(a)(1)(A) and (B)**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the**
**Defendant Medical Practices**
**Wrongful Billing of Facility Fees**

122.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

123.     Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims in order to obtain payment for facility fees, which claims were false because they were not legally payable, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

124.     Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for facility fees, which claims were false because they were not legally payable, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

## COUNT VII

**31 U.S.C. § 3729(a)(1)(A) and (B)**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices**
**Double Billing Workmens Compensation Claims**

125.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

126.     Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims in order to obtain payment for services duly payable by the patients'

workmens compensation carriers, which claims were false because they were not legally payable by Federal health care programs, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

127.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for services duly payable by the patients' workmens compensation carriers, which claims were false because they were not legally payable under Federal health care programs, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

**COUNT VIII**

**31 U.S.C. § 3729(a)(1)(A) and (B)**

**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices**

**Use of False National Provider Identification Number for Attending Physicians**

128.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 112 as if fully set forth herein

129.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims to obtain payment for services by attending physicians who were not credentialed, which claims were false because they were not legally payable, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

130.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for services by attending physicians who were not credentialed, which claims were false because they were not legally payable, and knowingly made, used and caused to be made and used false records and statements of the attending physicians' National Provider Identification Numbers material to such claims and other claims, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

## COUNT IX

### 31 U.S.C. § 3729(a)(1)(A) and (B)
### Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices
### Routine Waiver of Deductibles and Co-Payments

131.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

132.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the United States Government claims in order to obtain payment for services for which they systematically failed to bill for, waived or wrote off the patient deductible and co-payment amounts without determining their collectability or any hardship they would occasion to the beneficiaries, which claims were false because the Defendants were not entitled to collect them under such circumstances, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A).

133.    Through the acts described above and otherwise, Defendants Dr. Park, Biber,

CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for services for which they systematically failed to bill for, waived or wrote off the patient deductible and co-payment amounts without determining their collectability or any hardship they would occasion to the beneficiaries, which claims were false because the Defendants were not entitled to collect them under such circumstances, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).

### COUNT X

**N.Y. State Fin. Law § 189.1(a) and (b)**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the**
**Defendant Medical Practices**

**Upcoding by Billing High-Level E/M Codes Without Recording PFSH**

134.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

135.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims in order to obtain payment for New Patient Evaluation and Management services under CPT Codes 99203, 99204 and 99205, and Established Patient Evaluation and Management services under CPT Codes 99214 and 99215, which claims were false because the Defendants did not record any past, family or social history of the patients in connection with such services, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

136.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused

to be presented to agents of the State of New York claims in order to obtain payment for New Patient Evaluation and Management services under CPT Codes 99203, 99204 and 99205, and Established Patient Evaluation and Management services under CPT Codes 99214 and 99215, which claims were false because the Defendants did not record any past, family or social history of the patients in connection with such services, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

### COUNT XI

### N.Y. State Fin. Law § 189.1(a) and (b)
### Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices

#### Upcoding by Billing Services to Established Patients as New Patient Services

137.    Plaintiff_re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

138.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims in order to obtain payment under New Patient service codes for Evaluation and Management services rendered to established patients, which claims were false because the services billed were not provided, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

139.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the State of New York claims in order to obtain payment under New Patient service codes for Evaluation and Management services rendered to established patients,

which claims were false because the services billed were not provided, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

## COUNT XII

### N.Y. State Fin. Law § 189.1(a) and (b)
### Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices

### Other Upcoding of E/M Services

140.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

141.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims in order to obtain payment for upcoded E/M services, which claims were false because they did not reflect the services actually rendered, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

142.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for upcoded E/M services, which claims were false because they did not reflect the services actually rendered, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

## COUNT XIII

**N.Y. State Fin. Law § 189.1**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices**
**Unbundling by Wrongful Appending of Modifier 25 to E/M Charges**

143.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 112 as if fully set forth herein

144.     Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims using Modifier 25 in order to obtain separate payment for evaluation and management services otherwise bundled with other services being billed with such claims, when there was no separateness of the evaluation and management services from the other services, such claims being false because the evaluation and management services were not separately payable, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

145.     Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the State of New York claims using Modifier 25 in order to obtain separate payment for evaluation and management services otherwise bundled with other services being billed with such claims, when there was no separateness of the evaluation and management services from the other services, such claims being false because the evaluation and management services were not separately payable, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

## COUNT XIV

**N.Y. State Fin. Law § 189.1(a) and (b)**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the**
**Defendant Medical Practices**
**Billing After-Hours Services Charge for Patients Seen During Posted Business Hours**

146. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein.

147. Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims in order to obtain payment for after hours urgent care services under CPT code 99050, when the patients were seen during posted business hours, which claims were false because the services billed were not provided, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

148. Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the State of New York claims in order to obtain payment for after hours urgent care services under CPT code 99050, when the patients were seen during posted business hours, which claims were false because the services billed were not provided, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

**COUNT XV**

**N.Y. State Fin. Law § 189.1(a) and (b)**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the**
**Defendant Medical Practices**
**Wrongful Billing of Facility Fees**

149.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

150.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims in order to obtain payment for facility fees, which claims were false because they were not legally payable, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

151.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the State of New York claims in order to obtain payment for facility fees, which claims were false because they were not legally payable, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

## COUNT XVI

### N.Y. State Fin. Law § 189.1(a) and (b)
### Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices
### Double Billing Workmens Compensation Claims

152.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

153.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims in order to obtain payment for services duly payable by the patients' workmens compensation carriers, which claims were false because they were not legally payable under

New York health care programs, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

154.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the State of New York claims in order to obtain payment for services duly payable by the patients' workmens compensation carriers, which claims were false because they were not legally payable under New York health care programs, and knowingly made, used and caused to be made and used false records and statements material to such claims,, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

## COUNT XVII

**N.Y. State Fin. Law § 189.1(a) and (b)**
**Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices**
**Use of False National Provider Identification Number for Attending Physicians**

155.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein

156.    Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims in order to obtain payment for services by attending physicians other than those who actually provided the care, which claims were false because the services were not actually provided, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

157.    Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused

to be presented to agents of the State of New York claims in order to obtain payment for services by attending physicians who were not credentialed, which claims were false because they were not legally payable, and knowingly made, used and caused to be made and used false records and statements of the attending physicians' National Provider Identification Numbers material to such claims and other claims, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

## COUNT XVIII

### N.Y. State Fin. Law § 189.1(a) and (b)
### Defendants Dr. Park, Mr. Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices

### Routine Waiver of Deductibles and Co-Payments

158.   Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 106 as if fully set forth herein.

159.   Through the acts described above and otherwise, Defendants CPGNY, PPMA, and the Defendant Medical Practices knowingly presented to agents of the State of New York claims in order to obtain payment for services for which they systematically failed to bill for, waived or wrote off the patient deductible and co-payment amounts without determining their collectability or any hardship they would occasion to the beneficiaries, which claims were false because the Defendants were not entitled to collect them under such circumstances, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a).

160.   Through the acts described above and otherwise, Defendants Dr. Park, Biber, CPGNY, PPMA, the Defendant Partners, and the Defendant Medical Practices knowingly caused to be presented to agents of the State of New York claims in order to obtain payment for services for which they systematically failed to bill for, waived or wrote off the patient deductible and co-

payment amounts without determining their collectability or any hardship they would occasion to the beneficiaries, which claims were false because the Defendants were not entitled to collect them under such circumstances, and knowingly made, used and caused to be made and used false records and statements material to such claims, thereby causing damage to the State of New York in violation of State Fin. Law § 189.1(a) and (b).

### PRAYER FOR RELIEF

Plaintiff demands judgment against the Defendants and each of them as follows:

a.  That by reason of the violations of the FCA, this Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Five Hundred Dollars ($5,500) and not more than Eleven Thousand Dollars ($11,000) for each violation of 31 U.S.C. § 3729;

b.  That Relator, as a *qui tam* Plaintiff, be awarded the maximum amount allowed pursuant to Section 3730(d) of the FCA and/or any other applicable provision of law;

c.  That by reason of the violations of the NYFCA, this Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the State of New York has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Dollars ($5,000) and not more than Ten Thousand Dollars ($10,000) for each violation of N.Y. State Fin. Law §189;

d.  That Relator, as a *qui tam* Plaintiff, be awarded the maximum amount allowed pursuant to N.Y. State Fin. Law §190 and/or any other applicable provision of law;

e.  That Relator be awarded all costs of this action, including attorney's fees and court

costs;

    f. That Plaintiff be granted a trial by jury; and

    g. That Plaintiff have such other relief as the Court deems just and proper.

Dated: July 22, 2015

Respectfully submitted,

David P. Parker, D.C. Bar No. 218172
Liles Parker PLLC
2121 Wisconsin Avenue N.W., Suite 200
Washington, DC 20007
Telephone:   (202) 298-8750
Fax:         (202) 337-5804
Email:      dparker@lilesparker.com

Robert G. Leino, RL-4082
224 Riverside Drive, 6B
New York, New York 10025
Telephone:   (212) 964-1574
E-mail:     rgleino@leinolaw.com

ATTORNEYS FOR RELATOR

57

# TABLE OF EXHIBITS

| Exhibit | Document |
|---------|----------|
| Exhibit A | Jan. 28, 2013 visit information for Patient 1, with bill and EOB |
| Exhibit B | June 16, 2012 visit information for Patient 2, with bill |
| Exhibit C | Aug. 25, 2011 visit information for Patient 3, with bill and EOB |
| Exhibit D | Nov. 19, 2010 visit information for Patient 4, with payment records |
| Exhibit E | Sept. 27, 2011 visit information for Patient 5, with Form 1500 bill |
| Exhibit F | Aug. 20, 2012 visit information for Patient 6, with Form 1500 bill; and Aug. 22, 2012 visit information for Patient 6, with Form 1500 bill and EOB |
| Exhibit G | January 5, 2012 visit information for Patient 7, with Form 1500 bill and EOB |
| Exhibit H | June 20, 2013 email with Billing Sheet. |
| Exhibit I | Sept. 7, 2012 email with Billing Sheet |
| Exhibit J | Dec. 2, 2010 "Doc-Tor.com" enrollment application |
| Exhibit K | Dec. 23, 2012 visit information for Patient 8, with Form 1500 bill, payment check and EOB |
| Exhibit L | Dec. 22, 2012 visit information for Patient 9, with Form 1500 bill and EOB |
| Exhibit M | Jan. 18, 2012 email |
| Exhibit N | Feb. 8, 2012 visit information for Patient 10, with Form 1500 bill, Form UB04 bill and EOB |
| Exhibit O | Feb. 9, 2012 email concerning complaint by Patient 11 |
| Exhibit P | Jan. 20, 2012 email concerning complaint by Patient 12 |
| Exhibit Q | Mar. 1, 2012 email |
| Exhibit R | Excerpts from United Healthcare Insurance Company of New York's The Empire Plan "July 2011 Physician & Provider Manual", and Oct. 11, 2012 letter from United Healthcare regarding charges for care to Patient 7 |
| Exhibit S | Nov. 12, 2012 email |
| Exhibit T | Nov. 6, 2012 email |

| | |
|---|---|
| Exhibit U | Aug. 16, 2011 visit information for Patient 13, with Form 1500 bill and EOB |
| Exhibit V | Feb. 19, 2013 visit information for Patient 14, with Form 1500 bill and EOB |
| Exhibit W | March 20, 2012 email |
| Exhibit X | Sept. 16 2013 emails concerning complaint by Patient 15 |
| Exhibit Y | Feb. 13, 2012 email |
| Exhibit Z | July 11, 2012 email |
| Exhibit AA | Feb. 11, 2013 email |
| Exhibit BB | Apr. 1, 2012 email |
| Exhibit CC | May 15, 2012 email |
| Exhibit DD | May 4, 2012 email |
| Exhibit EE | July 11, 2012 email |
| Exhibit FF | Feb. 13, 2012, July 30, 2012, Aug. 2, 2012 and Nov. 6, 2012 emails |

## **VERIFICATION**

STATE OF NEW JERSEY    )
                                         )
COUNTY OF PASSAIC     )

      CAROL BEVILACQUA, being duly sworn, deposes and says:

1.     I am one of the Plaintiffs in the action reflected in the foregoing complaint.

2.     I have read the foregoing complaint and know the contents thereof; and the same

is true to my own knowledge, or where so stated, upon my information and belief.

CAROL BEVILACQUA

Sworn to before me on this
29th day of ___July___, 2015

Notary Public

LIRIDA POLOZHANI
Notary Public
State of New Jersey
My Commission Expires Oct·22, 2019

60